UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SCOTT JOHNSON,<br><br>        Plaintiff,<br><br>    v.<br><br>LMT FOODS, INC.,<br><br>        Defendant. | Case No.   5:21-cv-03967-EJD<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 13 |

Plaintiff Scott Johnson ("Plaintiff") alleges that Defendant LMT Foods, Inc. ("Defendant") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*., and the California Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code §§ 51–53.  *See* Complaint for Damages and Injunctive Relief ("Compl."), Dkt. No. 1.  Before the Court is Defendant's motion to dismiss Plaintiff's Complaint.  Defendant's Memorandum of Points and Authorities and Motion to Dismiss the ADA Claim as Moot; Request the Court to Decline Supplemental Jurisdiction ("Mot."), Dkt. No. 13.  Plaintiff filed an opposition, to which Defendant filed a reply.  Plaintiff's Opposition to the Defense Motion to Dismiss ("Opp."), Dkt. No. 15; Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss ("Reply"), Dkt. No. 18.  Having considered the Parties' submissions, the relevant law, and the record in this case, the Court **GRANTS** Defendant's motion to dismiss.[1]

---

[1] On June 22, 2022, this Court found this motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b).  *See* Dkt. No. 24.

Case No.: 5:21-cv-03967-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
1

## I. BACKGROUND

Plaintiff is a level C-5 quadriplegic with physical disabilities. Compl. ¶ 1. He uses a wheelchair for mobility and has a specially equipped van. Compl. ¶ 1. Defendant owns a Togo's, which is located at or about 1111 Meridian Ave, San Jose, California. Compl. ¶¶ 2, 3.

Plaintiff alleges that he went to Togo's in July 2020 and April 2021, with the intention to avail himself of its goods or services. Compl. ¶ 8. Plaintiff alleges that on the dates of his visits, he encountered unlawful barriers. Compl. ¶ 8. On the dates of Plaintiff's visits, Defendant allegedly failed to provide wheelchair accessible dining surfaces in conformance with ADA standards. Compl. ¶ 10. Specifically, Plaintiff encountered the lack of sufficient knee or toe clearance under the outside dining surfaces for wheelchair users. Compl. ¶ 12.

Plaintiff alleges that these barriers relate to and impact his disability. Compl. ¶ 15. Plaintiff plans to return to Togo's to avail himself of its goods and services but is currently deterred from doing so because of the alleged barriers. Compl. ¶ 20.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(h)(3)

Federal Rule of Civil Procedure 12(h)(3) provides: "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." "The distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party." *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 880 n.3 (3d Cir. 1992).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) tests whether the court has subject matter jurisdiction. Although lack of "statutory standing" requires dismissal for failure to state a claim under Rule 12(b)(6), lack of Article III standing requires dismissal for want of subject matter jurisdiction under Rule 12(b)(1). *See Nw. Requirements Utilities v. F.E.R.C.*, 798 F.3d 796, 808 (9th Cir. 2015) ("Unlike Article III standing, however, 'statutory standing' does not implicate our subject-matter jurisdiction.") (citing *Lexmark Int'l, Inc. v. Static Control*

Case No.: 5:21-cv-03967-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
2

*Components, Inc.*, 572 U.S. 118, 128 n.4 (2014))); *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). A Rule 12(b)(1) jurisdictional attack may be factual or facial. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Ordinarily, when a Rule 12(b)(1) motion is ruled upon, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983) (quotation marks and citation omitted). The district court is ordinarily free to hear evidence regarding jurisdiction and to rule on that issue prior to trial, resolving factual disputes where necessary. *Id.* However, where the jurisdictional issues and substantive issues are so intertwined that the question of jurisdiction is dependent on the resolution of factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or a trial. *Id.*

In ruling on a jurisdictional motion involving factual issues going to the merits, the district court should employ the standard applicable to a motion for summary judgment, as a resolution of the jurisdictional facts is akin to a decision on the merits. *Id.* Therefore, the moving party can only prevail if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Unless that standard is met, the jurisdictional facts must be determined at a trial by the trier of fact. *Id.* As in this case, "where a statute provides the basis for both the subject matter jurisdiction of the federal court and the plaintiff's substantive claim for relief, the question of jurisdiction and the merits of [the] action are intertwined." *Safe Air for Everyone*, 373 F.3d at 1039–40.

Plaintiff's substantive claims and this court's jurisdiction are both premised upon the ADA, and thus jurisdiction and substance are intertwined. *Org. for the Advancement of Minorities with Disabilities v. Brick Oven Rest.*, 406 F. Supp. 2d 1120, 1126 (S.D. Cal. 2005). Therefore, the Court must apply the summary judgment standard to Defendant's motion to dismiss for lack of jurisdiction.

### B. Supplemental Jurisdiction

When a federal court has original jurisdiction over a claim, the court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy." 28 U.S.C. § 1367(a). State claims are part of the same case or controversy as federal claims "'when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.'" *Kuba v. 1–A Agric. Ass'n*, 387 F.3d 850, 855–56 (9th Cir. 2004) (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.2d 923, 925 (9th Cir. 2003)). Supplemental jurisdiction is mandatory unless prohibited by § 1367(b),[2] or unless one of the exceptions in § 1367(c) applies. *Schutza v. Cuddeback*, 262 F. Supp. 3d 1025, 1028 (S.D. Cal. 2017). Under § 1367(c), a district court may "decline supplemental jurisdiction over a claim" if:

> (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

A district court's discretion to decline to exercise supplemental jurisdiction over state law "is informed by the Gibbs values 'of economy, convenience, fairness, and comity.'" *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, (1966)). A court may decline to exercise supplemental jurisdiction under § 1367(c) "under any one of [the statute's] four provisions." *San Pedro Hotel Co., Inc. v. City of L.A.*, 159 F.3d 470, 478–79 (9th Cir. 1998). When dismissing a state-law claim pursuant to subparts (1) through (3), a district court need not state its reason for dismissal. *Id.* If a district court declines to exercise supplemental jurisdiction under § 1367(c)(4), however, the court must

---

[2] 28 U.S.C. § 1367(b) applies to civil actions where a district court has original jurisdiction founded solely on 28 U.S.C. § 1332 (diversity jurisdiction). Because the Court's jurisdiction over this case is founded on 28 U.S.C. § 1331 (federal question jurisdiction), § 1367(b) is inapplicable.

Case No.: 5:21-cv-03967-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
4

"articulate why the circumstances of the case are exceptional." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994), *overruled on other grounds by Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087, 1095 (9th Cir. 2008). The Ninth Circuit has cautioned that declining supplemental jurisdiction based on § 1367(c)(4) should be the exception, not the rule. *Id.* at 1558.

### III. DISCUSSION

#### A. ADA Claim

Defendant moves to dismiss Plaintiff's complaint, arguing that Plaintiff's claim is moot. Under the ADA, plaintiffs may only seek injunctive relief and attorneys' fees. *See* 42 U.S.C. § 12188(a)(1); *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400 (1968). Once a federal court determines that a case is moot, the court no longer has subject matter jurisdiction over the ADA claim. "Voluntary cessation of challenged conduct moots a case . . . only if it is '*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (quoting *United States v. Concentrated Phosphate Export Ass'n, Inc.*, 393 U.S. 199, 203 (1968)). "Defendants face a heavy burden to establish mootness in such cases." *Id.*

Defendant argues that it had an existing ADA table at the time of Plaintiff's visit and had a CASp inspection and report done to confirm this. Mot. at 5. Defendant also entered a contract with a CASp inspector to return every year for three years to ensure that continued ADA compliance. The first inspection will occur no later than July 1, 2022. *See* Declaration of Kelly Bray ("Bray Decl."), Dkt. No. 13-5; *see also* Exh. C, Dkt. No. 13-4. Defendant also has a written ADA policy and procedure manual.

On August 18, 2021, Defendant emailed Plaintiff's counsel asking whether LMT was wrongly sued because Defendant had an existing ADA table and was closed in July 2020, a date claimed by Plaintiff to have visited. *See* Dkt. No. 13-2. On August 25, 2021, opposing counsel's assistant attached a photo of a round metal table with chairs. Defendant acknowledged that Togo's had that table but noted that it had purchased the ADA table on or around April 12, 2019,

1  before Plaintiff's alleged visit.  Despite this, Plaintiff refused to dismiss his complaint, even

2  though defense counsel informed him that the Togo's is ADA complaint and that he could return

3  at any time to verify this.

4        Defendant argues that Plaintiff's claim is moot.  The Court agrees.  A claimed remedy

5  might become moot if "subsequent events make it absolutely clear that the allegedly wrongful

6  behavior could not reasonably be expected to recur."  *Friends of the Earth, Inc. v. Laidlaw Envtl.*

7  *Servs. (TOC), Inc.*, 528 U.S. 167, 170 (2000); *United States v. Concentrated Phosphate Exp.*

8  *Ass'n*, 393 U.S. 199, 203 (1968).  Federal courts are "without power to decide questions that

9  cannot affect the rights of litigants in the case before them."  *DeFunis v. Odegaard*, 416 U.S. 312,

10  316 (1974) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  The inability to review

11  moot cases derives from Article III's requirement that a "case or controversy" exist between the

12  parties.  *Id.* at 316.  While a defendant's voluntary cessation of allegedly wrongful conduct is

13  unlikely to moot a case, it is possible for a defendant's voluntary cessation to moot a case.

14  *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013).  A defendant claiming its voluntary

15  compliance moots a case bears the formidable burden of showing the wrongful conduct will not

16  recur.  *Friends of the Earth, Inc.*, 528 U.S. at 189.

17        Here, there is uncontroverted evidence that Togo's has ADA compliant seating.  *See* Dkt.

18  Nos. 13-2, 13-4.  In other words, the seating at Togo's has no ADA problems, and seemingly

19  never had any problems.  Even assuming the seating was not ADA compliant during Plaintiff's

20  visits, the alleged ADA issue arises from the lack of ADA-compliant seating.  As noted,

21  Defendant has implemented significant protocols to ensure ADA compliance.  First, Defendant

22  has contracted with a CASp inspector to make sure its seating is ADA complaint.  Second,

23  Defendant has committed to perform annual inspections for at least the next three years to ensure

24  Togo's meets ADA standards.  It is thus uncontested that Defendants have voluntarily remedied

25  all alleged barriers.  This renders Plaintiff's claim moot as there is currently ADA compliant

26  seating.

27

28  Case No.: 5:21-cv-03967-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
6

In response, Plaintiff argues that his ADA claim is not moot due to the voluntary cessation doctrine. Under this doctrine, when a defendant's voluntary cessation of a challenged activity is the basis for mootness, "it becomes the defendant's burden to demonstrate that 'subsequent events made it absolutely clear that the alleged wrongful behavior could not reasonably be expected to recur.'" *Moore v. Dollar Tree Stores, Inc.*, 85 F. Supp. 3d 1176, 1187 (E.D. Cal. 2015) (quoting *Friends of the Earth*, 528 U.S. at 189). In the context of ADA claims, "[c]ourts have held that where structural modifications are made, [ ] it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to occur in the future." *Moore v. Saniefar*, 2017 WL 1179407, at *6 (E.D. Cal. Mar. 29, 2017) (citation and quotation marks omitted) (first alteration in original). When considering non-structural features, courts have found that "voluntary remediation" of violations do "not moot an issue" because the violations "could easily reoccur." *Id*. To determine if the facts indicate a danger of future violations, courts consider the "bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Watanabe v. Home Depot USA, Inc.*, 2003 WL 24272650, at *4 (C.D. Cal. July 14, 2003) (citation omitted); *see also Langer v. G.W. Props., L.P.*, 2016 WL 3419299, at *4 (S.D. Cal. June 21, 2016) ("When determining whether behavior can reasonably be expected to recur, courts consider various issues, such as the (a) motivation behind the conduct, (b) reasons for the change in conduct, (c) volitional nature of the conduct, (d) length of time between the change in conduct and the complaint, and (e) ownership status of the defendant in relation to the property."); *Lozano v. C.A. Martinez Family Ltd. P'ship*, 129 F. Supp. 3d 967, 972 (S.D. Cal. 2015) ("[W]hether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit is relevant. . . .") (citation and quotation marks omitted) (alteration in original).

Defendant has met its burden—the pertinent considerations weigh in favor of finding that the violation, even while it pertains to a non-structural issue, is not reasonably likely to recur. While courts take a broad view of constitutional standing in disability access cases, the ADA's reach is "not unlimited." *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011).

Case No.: 5:21-cv-03967-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
7

1    Even while it was seemingly ADA compliant, Defendant still took substantial affirmative steps to
2    ensure continued compliance.  Upon receiving the Complaint, Defendant hired a CASp to review
3    the site and ensure that Togo's fully complied with the ADA.  Defendant also took steps to
4    prevent future violations by entering a three-year contract with a CASp to assess the property on a
5    bi-annual basis for compliance.  *See* Dkt. No. 13-4.  These affirmative steps indicate that the
6    violations are not reasonably likely to recur.  *See Moore*, 2017 WL 1179407, at *7; *see also*
7    *Turner v. Anand*, 2015 WL 4474671, at *7 (S.D. Cal. July 21, 2015) (finding that the violations,
8    including those pertaining to non-structural issues, could not "reasonably be expected to recur"
9    and dismissing the plaintiff's ADA claim where the defendants "did not have a history of
10   violating" the ADA and the defendants created a policy that "call[ed] for an annual inspection" to
11   ensure ADA compliance).

12         Defendants have no history of violating the ADA.  *Cf. Lozano*, 129 F. Supp. 3d at 971
13   (noting the defendants' history of ADA noncompliance).  Plaintiff also has not directed the Court
14   to any evidence indicating an intent by Defendants to violate the ADA in the future.  The dearth of
15   evidence showing past ADA violations or an intent to violate in the future indicates that future
16   violations are not reasonably likely to occur.  *See Johnson v. Holden*, 2020 WL 1288404, at *4
17   (N.D. Cal. Mar. 18, 2020); *cf. Clavo v. Zarrabian*, 2004 WL 3709049, at *4 (C.D. Cal. May 17,
18   2004) (holding that the plaintiff's ADA claim was not moot where the defendants had "an
19   entrenched policy of blocking access to" a "wheelchair accessible gate and check-out aisle" and
20   the defendants "failed to change that policy until after th[e] case was filed"); *Watanabe*, 2003 WL
21   24272650, at *4 (finding that the plaintiff's ADA claim was not moot where the defendant did not
22   change their policies and procedures to prevent future ADA violations and there was no indication
23   that the defendant intended to comply with ADA).

24         For these reasons, the Court holds that Defendants have met their heavy burden of showing
25   that it is "absolutely clear" that the alleged wrongful behavior is not reasonably likely to recur.
26   The voluntary cessation exception to mootness is thus inapplicable and Plaintiff's ADA claim is
27   moot.  Accordingly, Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure

12(h)(3) is **GRANTED.**

### B. Unruh Act Claim

The Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim and finds that exceptional circumstances warrant declining jurisdiction. *See Arroyo v. Rosas*, 19 F. 4th 1202, 1211–14 (9th Cir. 2021). This case is in its early stages, so concerns of judicial economy, convenience, fairness to litigants, and comity do not favor retaining jurisdiction. *See id.* at 1214. And the facts of the case—"a frequent filer of ADA and Unruh Act claims seeking federal jurisdiction to circumvent California's procedural barriers to such suits—present the type of exceptional circumstances contemplated by section 1367(c)(4)" to decline supplemental jurisdiction. *Whitaker v. Alice & Olivia California Holdings LLC*, 2022 WL 1135088, at *1 (N.D. Cal. Apr. 18, 2022); *Garcia v. Maciel*, 2022 WL 395316, at *3 (N.D. Cal. Feb. 9, 2022) (collecting cases).

### IV. CONCLUSION

For the above reasons, the Court **GRANTS** Defendant's motion to dismiss. Pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining Unruh Act Claim and dismisses Plaintiff's state law claim without prejudice. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: June 29, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-03967-EJD
ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
9